NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianllp.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianllp.com
PATTY W. CHEN, SBN 322992
patty.chen@salisianllp.com
**SALISIAN LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone: (213) 622-9100
Facsimile: (800) 622-9145

MICHELLE M. CHIONGSON (SBN 221740)
Michelle.chiongson@amerisbank.com
**AMERIS BANK**
575 Anton Boulevard, Suite 1080
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL<br><br>Plaintiff<br><br>vs.<br><br>ML CUSTOM WOODWORKING INC, a Massachusetts domestic profit corporation; RAFAEL MARTINS, an individual; and CEZAR LANCA, an individual,<br><br>Defendants. | Case No.:<br><br>**PLAINTIFF AMERIS BANK D/B/A BALBOA CAPITAL'S COMPLAINT FOR:**<br><br>**1. BREACH OF EQUIPMENT FINANCING AGREEMENT**<br><br>**2. BREACH OF PERSONAL GUARANTY (2 COUNTS)** |

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation doing business as Balboa Capital ("Balboa" or "Plaintiff"), alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Ameris Bank d/b/a Balboa Capital ("Balboa" or "Plaintiff") is, and at all times relevant to this action was, a Georgia state-chartered banking corporation with Balboa Capital as one of its divisions, which division has its principal place of business in the State of California, County of Orange.

2. Defendant ML Custom Woodworking Inc. ("ML Custom"), is, and at all times relevant to this action was, a Massachusetts domestic profit corporation, incorporated in Massachusetts, with its principal place of business in the County of Barnstable, State of Massachusetts.

3. Defendant Rafeal Martins ("Martins"), an individual, is, and at all times relevant to this action was, a resident of the County of Barnstable, State of Massachusetts, and was an officer, director, shareholder, agent and/or owner of ML Custom Woodworking Inc. Based on information and belief, including the Driver's License submitted by Martins to Balboa, Martina is domiciled in Cotuit, MA 02635.

4. Defendant Cezar Lanca ("Lanca") (collectively with ML Custom and Martins, "Defendants"), an individual, is, and at all times relevant to this action was, a resident of the County of Barnstable, State of Massachusetts, and was an officer, director, shareholder, agent and/or owner of ML Custom Woodworking Inc. Based on information and belief, including the Driver's License submitted by Lanca to Balboa, Lanca is domiciled in Falmouth, MA 02536.

5. Plaintiff is informed and believes, and thereon allege, that each defendant, directly or indirectly, or through agents or other persons, was engaged with some or all of the other defendants in a joint enterprise for profit and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and

believes and thereon alleges that each defendant acted pursuant to and within the scope of the relationships alleged above, that each defendant knew or should have known about the foregoing, and abetted the conduct of all other defendants.

6. The obligations sued upon herein are commercial in nature and the Complaint herein is not subject to the provisions of California Civil Code Sections 1801, *et seq.* (Unruh Retail Installment Sales Act) and/or California Civil Code Sections 2981, *et seq.* (Rees-Levering Motor Vehicle Sales and Finance Act).

7. Pursuant to the Equipment Financing Agreements and the Personal Guaranty described herein, Defendants agreed those documents would be governed by the laws of the State of California. In addition, the Equipment Financing Agreements provides, in pertinent part, as follows:

> **30. CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** . . . Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa, California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa, California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California.

8. <u>Jurisdiction</u>. This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a).

9. Specifically, as described above, Balboa is a citizen of the States of Georgia and California; ML Custom is a citizen of the State of Massachusetts; Martins is a citizen of the State of Massachusetts; and Lanca is a citizen of the State of Massachusetts. As such, neither ML Custom, Martins, nor Lanca are citizens of Georgia or California, and there exists complete diversity of citizenship between

Plaintiff and Defendants. Finally, as alleged herein, the amount in controversy exceeds $75,000.

10. Venue. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) and in the Southern Division pursuant to 28 U.S.C. § 84(c)(3).

11. All officers of Balboa, including all witnesses, and all of Balboa's documents are located in the State of California, County of Orange. The transactions at issue in this Action occurred in the State of California, County of Orange.

**FIRST CAUSE OF ACTION**

**(Breach of Equipment Financing Agreement)**

**(Against ML Custom)**

12. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

13. Prior to March 2024, Balboa is informed and believes that ML Custom initiated and engaged with Dustpipe.Com, Inc., located at 100 Ashburton Ave, Woburn, MA 01801 (the "Equipment Vendor"), in order to coordinate the acquisition and financing of certain equipment (the "Collateral") for its business. The Equipment Vendor worked with ML Custom in the selection of the Collateral and in coordinating its delivery.

14. Thereafter, Balboa is informed and believes, and therefore alleges, that the Equipment Vendor initiated and coordinated submission of ML Custom's electronic credit application to Balboa and other financial institutions. Upon review, ML Custom concluded that Balboa offered agreeable terms to finance the Collateral commensurate with its requirements. Thereafter, the Equipment Vendor accumulated and submitted to Balboa the requisite signatories, documentation and financial information from ML Custom to finance the Collateral being supplied by the Equipment Vendor.

15. On or about March 21, 2024, ML Custom executed Equipment Financing Agreement No. 294177-001 (the "EFA"), under the terms of which Balboa loaned to ML Custom the sum of Two Hundred Sixty-Nine Thousand Six Hundred Twenty Dollars and Four Cents ($269,620.04) in order to finance the Collateral for its business. The EFA required ML Custom to make seventy-two (72) monthly payments of $4,604.53, payable on the 20th day of each month beginning April 20, 2024. A true and correct copy of the EFA is attached as **Exhibit A** and is incorporated here by reference.

16. The last payment received by Balboa was credited toward the monthly payment due for December 20, 2025. Therefore, on or about January 20, 2026, ML Custom breached the EFA by failing to make the monthly payment due on that date. ML Custom's failure to make timely payments is a default under the terms of the EFA.

17. In accordance with the EFA, and as a proximate result of ML Custom's default thereunder, Balboa declared the entire balance of the payments under the EFA to be immediately due and payable to Balboa. Therefore, there became due the sum of $230,226.5. These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by ML Custom.

18. Pursuant to Section 19 of the EFA, in the event of a default, Balboa may: "(a) sue for and recover. . .the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement." Balboa's calculation of the discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure. For example, a payment owed exactly one year from today would be discounted at a certain rate whereas earlier payments would be discounted by less, and further payments would be discounted by more. After Defendants' default,

Balboa calculated the accelerated amount due using the PV formula. Based upon this formula, Defendants owed $204,546.83 ("PV'D Rent").

19. In addition to the PV'D Rent, Defendant owed the monthly payment for January 20, 2026, for a total amount of $4,604.53, which had not been accelerated at the time of default as this monthly payment was already payable. Accordingly, the total amount owed by Defendant at the time of default was $209,151.36.

20. Balboa has performed all of the terms, conditions, and covenants required to be performed by it under the terms of the EFA, except as excused or prevented by the conduct of ML Custom.

21. As a proximate result of ML Custom's breach of the EFA, Balboa has been damaged in the sum of $209,151.36, plus prejudgment interest from January 20, 2026, until the entry of judgment herein.

22. Further, under the terms of the EFA, ML Custom promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the EFA. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs against ML Custom.

23. The EFA also provides Balboa the remedy of possession of the Collateral and to obtain an order that Balboa may, in accordance with applicable state law, sell the remaining Collateral and apply the net proceeds from the sale to the remaining loan balance. Alternatively, if possession cannot be had, Balboa is entitled to recover the value of the Collateral.

## SECOND CAUSE OF ACTION

**(Breach of Personal Guaranty)**

**(Against Martins)**

24. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

25. Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with ML Custom, Martins personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA. A true and correct copy of the written Personal Guaranty signed by Martins ("Guaranty No. 1") is attached as **Exhibit B** incorporated herein by reference.

26. Balboa has performed all of the terms, conditions, and covenants required to be performed by Balboa under the terms of Guaranty No. 1, except as excused or prevented by the conduct of Martins.

27. Following a default by ML Custom under the terms of the EFA, Balboa demanded Martins make the payments required under the EFA. Martins failed to meet Guaranty No. 1 obligations and make the payments required under the EFA.

28. Pursuant to the terms of Guaranty, the sum of $209,151.36 plus prejudgment interest from January 20, 2026, is due and payable to Balboa from Martins. This Complaint, in addition to previous demands, shall constitute further demand upon Reeves to pay the entire indebtedness due and owing from ML Custom to Balboa under the terms of the EFA.

29. Under the terms of Guaranty No. 1, Martins promised to pay all costs, including reasonable attorney's fees, incurred by Balboa in the enforcement of the EFA Guaranty. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Martins.

**<u>THIRD CAUSE OF ACTION</u>**

**(Breach of Personal Guaranty)**

**(Against Lanca)**

1. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

2. Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with ML Custom, Lanca personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA. A true and correct copy of the written Personal Guaranty signed by Lanca ("Guaranty No. 2") is attached as **Exhibit C** incorporated herein by reference.

3. Balboa has performed all of the terms, conditions, and covenants required to be performed by Balboa under the terms of Guaranty No. 2, except as excused or prevented by the conduct of Lanca.

4. Following a default by ML Custom under the terms of the EFA, Balboa demanded Lanca make the payments required under the EFA. Lanca failed to meet Guaranty No. 2 obligations and make the payments required under the EFA.

5. Pursuant to the terms of Guaranty, the sum of $209,151.36 plus prejudgment interest from January 20, 2026, is due and payable to Balboa from Lanca. This Complaint, in addition to previous demands, shall constitute further demand upon Lanca to pay the entire indebtedness due and owing from ML Custom to Balboa under the terms of the EFA.

6. Under the terms of Guaranty No. 2, Lanca promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the EFA Guaranty. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Lanca.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment against Defendants, and each of them, as follows:

**On All Causes of Action:**

1. The sum of $209,151.36;

2. Prejudgment interest from January 20, 2026, to the date of entry of judgment;

3. An order to recover possession of the Collateral which is the subject of the EFA, or if the Collateral cannot be delivered, for its reasonable value according to proof;

4. Reasonable attorneys' fees and costs;

5. Costs of suit as provided by law; and

6. Such other and further relief that the Court considers proper.

DATED: March 17, 2026

SALISIAN LLP

By: ______________________________

Neal S. Salisian
Jared T. Densen
Patty W. Chen

*Attorneys for Plaintiff*
AMERIS BANK d/b/a BALBOA CAPITAL